**LEE M. PERLMAN**
**ATTORNEY AT LAW**
**1926 Greentree Road, Suite 100**
**Cherry Hill, New Jersey 08003**
**(856) 751-4224**
**ATTORNEY FOR DEBTORS, ANTHONY T. & KIMBERLY A. WALTERS &**
**MICHAEL E. WALTERS**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| RE: | : | CHAPTER 13 |
| ANTHONY T. & KIMBERLY A. WALTERS | : | CASE NO.: 09-41707 GMB |
| Debtor(s) | : | |

| | | |
|---|---|---|
| ANTHONY T. WALTERS   & | : | **AP NO.:** |
| Plaintiff/Debtor | : | **ADVERSARY COMPLAINT** |
| & | : | |
| MICHAEL E. WALTERS | : | |
| Plaintiff | : | |
| vs. | : | |
| CHARTER OAK FCU/E B | : | |
| Defendant | : | |

## I. INTRODUCTION

1.    This is an action for the disallowance of the Defendant's claim, injunctive relief and contempt of court pursuant to 11 U.S.C. § 105, and to recover actual, punitive and compensatory damages, sanctions, attorney fees and costs for the Defendant's willful and negligent actions that constitute invasion of the Plaintiff's privacy.

## II. JURISDICTION AND VENUE

2.    Jurisdiction is conferred on this Court pursuant to the provisions of §1334 of Title 28 of the United Stated Code in that this core proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor and the estate.

Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

3.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to § 1334 of Title 28 of the United States Code, § 157(b)(2) of Title 28 of the United States Code.

4.      This Court has supplemental jurisdiction to hear all state law claims pursuant to § 1367 of Title 28 of the United States Code.

## III. PARTIES

5.      The Plaintiff, Anthony T. Walters, (hereinafter "Plaintiff") in this case is a debtor under Chapter 13 of Title 11 of the United States Code in the above entitled Chapter 13 case number, presently pending before this court.

6.      The Plaintiff, Michael E. Walters, (hereinafter "Co-Plaintiff") is a natural person with an address of

7.      The Defendant, Charter Oak Fcu/e B (hereinafter "CHARTER OAK") is a corporation or other business entity with a principal office address of 3 Boston Post Rd., Waterford, CT 06385-2401.

8.      Isabel C. Balboa is the Standing Chapter 13 Trustee in this case with an address of 535 Route 38, Ste. 580, Cherry Hill, NJ 08002.  Although not a party to this action, the Trustee is a party in interest and will receive notice of the adversary proceeding.

## IV. FACTUAL ALLEGATIONS

9.      The Plaintiff's Chapter 13 case was commenced by filing a voluntary petition with the Clerk of this Court on November 24, 2009.

10.      At that time, the Plaintiff listed one CHARTER OAK account on Schedule F of his Chapter 13 bankruptcy petition.  See attached Schedule F as Exhibit "A".

11.      On December 9, 2009, CHARTER OAK filed a sworn Proof of Claim in the Plaintiff's Chapter 13 case, denoted as Claim # 4-1.  The claim was listed as unsecured in the amount of $7,333.14.  See Defendant's Proof of Claim as Exhibit "B".

12.      Along with the sworn Proof of Claim, CHARTER OAK attached additional

pages, which upon information and belief appear to be a contract for the Plaintiff's CHARTER

OAK Loan application.  See attachments to Proof of Claim (with appropriate redactions made by

the Plaintiff) as Exhibit "C".

13.    Additional pages display the Plaintiff's private information without the proper

redaction including:

| Page 1: | Full Social Security Number, full Driver's license number, phone number and full birth date. |
|---------|---|
| Page 2: | Full account number |
| Page 3: | Full Social Security Number, full Driver's license number, phone number, full birth date, and full account number. |
| Page 5: | Full account number |
| Page 6: | Full account number |

14.    In addition to displaying the Plaintiff's private information, page 3 also discloses

the Co-Plaintiff's private information including: social security number, phone number, full date

of birth, and full account number.

15.    The Plaintiffs allege that the Proof of Claim is a public document by which the

Defendant has now made their private, sensitive and personal nonpublic information available to

the general public.

16.    The Plaintiffs allege that the Defendant has revealed sufficient personal and

private data to enable an identity thief to hijack the Plaintiffs' identity and use it to commit

Financial Identity Theft (using another's identity to obtain goods and services), Criminal Identity

Theft (posing as another when apprehended for a crime), Identity Cloning (using another's

information to assume his or her identity in daily life), Business/Commercial Identity Theft

(using another's business name to obtain credit) and Medical Identity Theft (accessing personal

medical information for insurance fraud or to obtain medical care or drugs).

17.    Protection of individual personal, sensitive and private data by the federal

government and the court system is not a new or novel concept.  The E-Government Act of

2002, 44 U.S.C. § 3500, et seq., contains provisions governing the privacy of case file

information.  Federal courts were formally directed by the Committee on Court Administration

and Case Management, Judicial Conference of the United States, to immediately conform their local rules and practices to the Act.

18.    The Plaintiffs allege that the Defendant is a sophisticated financial creditor with knowledge of the bankruptcy rules and procedure.   The Defendant has an obligation to comply with all applicable rules and statutes when filing claims and participating in the bankruptcy process.

19.    The Plaintiff sfurther alleges that the Defendant has intentionally communicated and made available to the general public, her personal, sensitive and private data in direct violation of The New Jersey Identity Theft Prevention Act, N.J.S.A. § 56:11-44, the New Jersey statute N.J.S.A. § 56:8-164, the Gramm-Leach-Bliley Act 15 U.S.C. § 6801 *et seq.* and Federal Rule of Bankruptcy Procedure 9037.

## V. COURT RECOGNITION OF PRIVACY CONCERNS

20.    "Both Congress and other circuits have discussed the significant privacy concerns surrounding the dissemination of SSNs. Congress acknowledged those concerns in the Privacy Act of 1974, which barred government agencies from discriminating against individuals that refused to release their SSNs." Privacy Act of 1974, Pub.L. 93-579, § 7, 88 Stat. 1896, 1909 (1974), 365, reprinted in 5 U.S.C. § 552a (1996). The Senate Report supporting adoption of the Act described the universal use of SSNs as identifiers as "one of the most serious manifestations of privacy concerns in the Nation." S. Rep. No. 1183, 93rd Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Admin. News 6916, 6943.

Other circuits, relying in part on these Congressional statements, have concluded that the privacy interest in SSNs is significant, and thus public dissemination of information containing SSNs must be monitored scrupulously.  See *Crawford*, 194 F.3d at 958-59 (recognizing that "indiscriminate public disclosure of SSNs, especially when accompanied by names and addresses" can implicate informational privacy rights); *Greidinger v. Davis*, 988 F.2d 1344, 1353 (4th Cir.1993) ("[T]he harm that can be inflicted from the disclosure of a social security number to an unscrupulous individual is alarming and potentially financially ruinous."). The Third Circuit in particular has held that redaction of social security numbers is necessary where the

requestor failed to demonstrate any public interest in disclosure of the SSNs. *Int'l Bhd. of Elec. Workers Local Union No. 5 v. HUD*, 852 F.2d 87, 89 (3d Cir.1988).

Nevertheless, we recognize that individual citizens have a substantial informational privacy right to limit the disclosure of their SSNs, and consequently reduce the risk that they will be affected by various identity fraud crimes. *Sherman v. U.S. Dept. of Army*, 244 F.3d 357, C.A.5 (Tex.), 2001.

## FIRST CAUSE OF ACTION
## (OBJECTION TO CLAIM)

21.     The Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs one (1) through twenty (20) as though set forth herein at length.

22.     The Defendant has intentionally revealed the Plaintiffs' private and sensitive data and nonpublic information to the general public in violation of Federal Rule of Bankruptcy Procedure 9037.

23.     Therefore the Plaintiffs ask that the Court direct the Chapter 13 Trustee to strike the Defendant's claim and preclude them from filing any amended, modified or substitute claim in this case.  The Plaintiffs also asks the Court to cancel and forever discharge the underlying debt, regardless of whether or not she receives a Discharge Order in this case.

24.     The Plaintiffs also asks the Court to sanction the Defendant for the intentional revelation of the Plaintiffs' private data and sensitive information.

25.     Finally the Plaintiffs ask that the Court permanently disable the Defendant's claim within the PACER system, or remove the claim so that it is inaccessible to members of the general public.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE NEW JERSEY IDENTITY THEFT PREVENTION ACT
## AND NEW JERSEY STATUTE N.J.S.A. 56:8-164)

26.     The Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs one (1) through twenty-five (25) as though set forth herein at length.

27.     The Defendant has intentionally revealed the Plaintiffs' private and sensitive data

and nonpublic information to the general public in violation of the above New Jersey statutes.

28.      N.J.S.A. 56:8-164 prohibits any entity from posting or displaying an individual's
social security number or intentionally communicating or disclosing their social security number
to the general public.

29.      As a result of the above violations, the Defendant is liable to the Plaintiffs for
statutory, compensatory, and punitive damages as well as attorney fees and costs.

### THIRD CAUSE OF ACTION
### (CONTEMPT OF COURT AND VIOLATION OF FEDERAL RULE OF
### BANKRUPTCY PROCEDURE 9037
### FAILURE TO REDACT NONPUBLIC INFORMATION)

30.      The Plaintiffs incorporate herein by reference each and every allegation contained
in paragraphs one (1) through twenty-nine (29) as though set forth herein at length.

31.      On December 1, 2007, the Federal Rule of Bankruptcy Procedure 9037 and
Federal Rule of Civil Procedure 5.2 went into effect further strengthening and reinforcing the
Court's local rules and policies.

32.      Rule 9037 is titled Privacy Protection for Filings Made with the Court and
provides that:

>(a) REDACTED FILINGS.  Unless the court orders otherwise, in
>an electronic or paper filing with the court that contains an
>individual's social-security number, taxpayer identification
>number, or birth date, the name of an individual, other than the
>debtor, known to be and identified as a minor, or a financial-
>account number, a party or nonparty making the filing may include
>only:
>(1)      the last four digits of the social-security number and
>          taxpayer identification number;
>(2)      the year of the individual's birth;
>(3)      the minor's initials; and
>(4)      the last four digits of the financial-account number.

33.      By filing the Plaintiffs' private, nonpublic information, the Defendant has violated
Rule 9037 putting the Plaintiffs at risk and causing damage by making her personal, sensitive
information and nonpublic data publicly available.

34.     Under 11 U.S.C. § 105, the Court has the inherent ability to enforce the Court's orders, rules, and to prevent an abuse of process.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF GRAMM-LEACH-BLILEY ACT**
**15 U.S.C. SUBCHAPTER I §6801-6809**

35.     The Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs one (1) through thirty-four (34) as though set forth herein at length.

36.     The Gramm-Leach-Bliley Act was designed to prohibit the disclosure of nonpublic personal information, finding that it is the "policy of Congress that each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information. 15 U.S.C. § 6801.

37.     A financial institution means any institution the business of which is engaging in financial activities. 15 U.S.C. § 1609(3)(A)

38.     CHARTER OAK is in the business of engaging in financial activities by the collection of money owed by various debtors on consumer debt.

39.     CHARTER OAK has failed to provide any opt out provision as required by 15 U.S.C. § 6802.

40.     CHARTER OAK has disclosed nonpublic personal information by releasing the Plaintiffs' Social Security Number, full account number, home address and home telephone number and other personal information in a public forum

41.     The Gramm-Leach-Bliley Act sets the appropriate standard of care for the protection, security, and confidentiality of the nonpublic information and private date of the Defendant's customers.

42.     As a result of the Defendant's willful, grossly careless and direct violation of the Gramm-Leach-Bliley Act, the Plaintiffs have suffered damages, mental anguish and emotional distress and injury.

### FIFTH CAUSE OF ACTION
### INVASION OF PRIVACY AND
### INTENTIONAL OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

43.    The Plaintiffs incorporate herein by reference each and every allegation contained in paragraphs one (1) through forty-two (42) as though set forth herein at length.

44.    One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person and (b) is not of a legitimate concern to the public.

45.    Social Security Numbers, full account numbers, home addresses and home telephone numbers provide no use and are not a legitimate concern to the public.

46.    Defendant intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of the Plaintiffs, by disclosing the Plaintiffs' personal nonpublic information.

47.    Defendant intentionally and/or negligently caused harm to the Plaintiffs' emotional well-being by engaging in this highly offensive conduct thereby invading and intruding upon the Plaintiffs' right to privacy.

48.    The Defendant's gross and careless conduct unlawfully invaded the Plaintiffs' personal privacy and proximately caused the Plaintiffs to suffer damages.

49.    Defendant's conduct was intentional, reckless and willful, and the Plaintiffs are entitled to recover exemplary damages in an amount to be set by the trier of fact.  Plaintiffs also seeks damages for the mental and emotional anguish that has been caused by knowing that the personal identifiers, nonpublic, sensitive information and private data has been made public by the Defendant's wanton actions.

**WHEREFORE**, the Plaintiffs pray for the following relief:

A.    A finding that the Defendant is in civil contempt for violating the established policies, rules and orders of the Court in establishing privacy standards;

B.    An order of injunctive relief to disable the claim number within the PACER system so that it is inaccessible to the general public and/or to permanently remove the claim and its nonpublic information from access by the public;

C.    Sanctions, damages, attorney fees and costs against the Defendant for the intentional revelation of the Plaintiffs' private data, knowingly exposing her to the risk of identity theft in violation of the standards set by the Gramm-Leach-Bliley Act;

D.    Punitive damages to the Plaintiffs in order to prevent future conduct of this kind;

E.    Compensatory and punitive damages, attorney fees, costs and suit money against the Defendant for the intentional and willful invasion of the Plaintiffss right to privacy;

F.    Damages against the Defendant for the intentional or negligent infliction of emotional distress;

G.    Attorney's fees and expenses under § 107 and § 105 of the Bankruptcy Code;

H.    Direct the Chapter 13 Trustee to strike the Defendant's claim;

I.    Prohibit the Defendant from filing any amended, modified or substitute claim;

J.    Cancel and void the underlying debt whether or not the Plaintiff receives a Discharge Order in her Chapter 13 case;

K.    Such other and further relief as the Court may deem just and proper.



January 4, 2010                           /s/ Lee M. Perlman
DATE                                      LEE M. PERLMAN, ESQUIRE


/s/ Lee M. Perlman
Lee M. Perlman, Esq.
Law Offices of Lee M. Perlman
Attorney for the Plaintiffs
1926 Greentree Rd, Suite 100
Cherry Hill, NJ 08003
(856) 751-4224
Fax (856) 751-4226

# Exhibit A

Case 09-41707-GMB    Doc 1    Filed 11/24/09    Entered 11/24/09 20:41:30    Desc Main
Document    Page 11 of 21

B6F (Official Form 6F) (12/07) - Cont.

IN RE **Walters, Anthony T. & Walters, Kimberly A.**                              Case No. _____
Debtor(s)                                                                                    (If known)

## SCHEDULE F - CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME, MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| ACCOUNT NO. **2252**<br>**Bank Of America**<br>**Nc 4 105 03 # 14**<br>**Greensboro, NC  27420** | | J | **2008;**<br>**Credit card purchases** | | | | **unknown** |
| ACCOUNT NO. **0909**<br>**Charter Oak Fcu/e B**<br>**3 Boston Post Rd**<br>**Waterford, CT  06385** | | H | **2008;**<br>**Credit card purchases** | | | | **5,799.00** |
| ACCOUNT NO. **9425**<br>**Cingular Wireless**<br>**Correspondence**<br>**15901 E Skelly Dr**<br>**Tulsa, OK  74116** | | H | **2008;**<br>**Collection account** | | | | **1,946.00** |
| ACCOUNT NO.<br>**Collection Company Of**<br>**700 Longwater Dr**<br>**Norwell, MA  02061** | | | **Assignee or other notification for:**<br>**Cingular Wireless** | | | | |
| ACCOUNT NO. **8469**<br>**Dental Care Of Stratford, LLC**<br>**105 E Laurel Rd**<br>**Stratford, NJ  08084-1324** | | J | **2007;**<br>**Medical bills** | | | | **134.00** |
| ACCOUNT NO. **3467**<br>**Discover Fin Svcs Llc**<br>**PO Box 3025**<br>**New Albany, OH  43054** | | J | **2008;**<br>**Credit card purchases**<br>**DC-003635-09** | | | | **5,308.00** |
| ACCOUNT NO.<br>**Eichenbaum & Stylianou, LLC**<br>**PO Box 914**<br>**Paramus, NJ  07653** | | | **Assignee or other notification for:**<br>**Discover Fin Svcs Llc** | | | | |

Sheet no. _____**1**___ of _____**6**___ continuation sheets attached to
Schedule of Creditors Holding Unsecured Nonpriority Claims

Subtotal
(Total of this page) $ **13,187.00**

Total
(Use only on last page of the completed Schedule F. Report also on
the Summary of Schedules, and if applicable, on the Statistical
Summary of Certain Liabilities and Related Data.) $

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

## Exhibit B

B10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT District of New Jersey | PROOF OF CLAIM |
|---|---|

| Name of Debtor: Anthony T. Walters<br>Kimberly A. Walters | Case Number:   09-41707  *GMB* | Mail Claim To:<br>Clerk, U.S. Bankruptcy Court<br>U.S. Bankruptcy Court<br>401 Market Street<br>Camden, NJ 08102 |

**NOTE:** *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Charter Oak Fcu/c B

Name and address where notices should be sent:

Charter Oak Fcu/c B
3 Boston Post Rd
Waterford, CT 06385-2401

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

Telephone number: 1-806-962-3237 ext 337

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Telephone number:

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $ 7,333.14

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

**2. Basis for Claim:** Loan Sub 99 Money Loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** ░░░0653

   **3a.** Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507 (a)(4).

**4. Secured Claim (See instruction #4 on reverse side.)**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property: $_____ Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any: $_____ Basis for perfection: _____

Amount of Secured Claim: $_____ Amount Unsecured: $_____

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

Amount entitled to priority:

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

| Date: 12/9/09 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Beedy Kowe   Beedy Kowe   Collection Specialist | FOR COURT USE ONLY |

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

# Exhibit C

# CREDIT APPLICATION

## TYPE OF CREDIT REQUESTED

IMPORTANT: Check (√) the appropriate boxes below and complete the applicable sections.

☐ SECURED   ☐ INDIVIDUAL CREDIT - relying solely on my income or assets

☐ UNSECURED   ☐ INDIVIDUAL CREDIT - relying on my income or assets as well as income or assets from **other sources**

☐ JOINT CREDIT

**FOR CREDITOR USE**

DATE 12/28/2006    CLASS NO. _____
ACCOUNT NO. _____
APPROVED ☐ BY _____
DECLINED ☐ BY _____

| AMOUNT REQUESTED | FOR HOW LONG | PAYMENT DATE DESIRED | WANT TO REPAY | PROCEEDS OF LOAN TO BE USED FOR: |
|---|---|---|---|---|
| $ 6000 | 5Y | | ☐ MONTHLY ☐ | Ready Cash; Cash Too |

## SECTION A - INDIVIDUAL APPLICANT INFORMATION

**NAME (Last, First, Middle)**
WALTERS, ANTHONY T

| BIRTHDATE | TELEPHONE NO. | DRIVER'S LICENSE NO. | SOCIAL SECURITY NO. | NO. DEPENDENTS | AGES OF DEPENDENTS |
|---|---|---|---|---|---|
| ●●/1981 | (●●) ●●-●●● | ●●●●●●● | ●●●-9031 | | |

**ADDRESS (Street, City, State & Zip)**
1242 W KINGS HWY #101, MOUNT EPHRAIM, NJ 08059

COUNTY _____   Do you ☐ own or ☑ rent?   HOW LONG 1Y 6M

**PREVIOUS ADDRESS (Street, City, State & Zip) (Complete if less than 3 years at present address)**

COUNTY _____   Did you ☐ own or ☐ rent?

**EMPLOYER (Company Name & Address)**
P R D management, 1300 Lombard Street Philadelphia, PA 19147

HOW LONG 3Y 7M

| BUSINESS PHONE   Ext. | POSITION OR TITLE | | SALARY PER MONTH |
|---|---|---|---|
| (●●●) ●●●-●●●● | superintendent | GROSS: $ 2800 | NET: $ |

**PREVIOUS EMPLOYER (Company Name & Address)**

HOW LONG

**NAME AND ADDRESS OF NEAREST RELATIVE NOT LIVING WITH YOU**   RELATIONSHIP   TELEPHONE NO. (Include Area Code)

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

Alimony, child support, separate maintenance received under: ☐ Court Order ☐ Written Agreement ☐ Oral Understanding

**SOURCES OF OTHER INCOME**   AMOUNT PER MONTH $

Is any income listed in this Section likely to be reduced before the credit request is paid off?   Have you previously received credit from us?

☐ No ☐ Yes (Explain)   ☐ No ☐ Yes - When?

## SECTION B - JOINT APPLICANT OR OTHER PARTY INFORMATION

Complete only if: for joint credit, for individual credit relying on income or assets from other sources, or applicant is married and resides in a community property state.

**NAME (Last, First, Middle)**

| BIRTHDATE | TELEPHONE NO. | DRIVER'S LICENSE NO. | SOCIAL SECURITY NO. | NO. DEPENDENTS | AGES OF DEPENDENTS |
|---|---|---|---|---|---|
| | | | | | |

**RELATIONSHIP TO APPLICANT (If Any)**   **PRESENT ADDRESS (Street, City, State & Zip)**   HOW LONG

**EMPLOYER (Company Name & Address)**   HOW LONG

| BUSINESS PHONE   Ext. | POSITION OR TITLE | | SALARY PER MONTH |
|---|---|---|---|
| | | GROSS: $ | NET: $ |

**PREVIOUS EMPLOYER (Company Name & Address)**   HOW LONG

Alimony, child support, or separate maintenance income need not be revealed if you do not wish to have it considered as a basis for repaying this obligation.

Alimony, child support, separate maintenance received under: ☐ Court Order ☐ Written Agreement ☐ Oral Understanding

**SOURCES OF OTHER INCOME**   AMOUNT PER MONTH $

Is any income listed in this Section likely to be reduced before the credit requested is paid off?   Has Joint Applicant or Other Party ever received credit from us?

☐ No ☐ Yes (Explain)   ☐ No ☐ Yes - When?

## SECTION C - MARITAL STATUS

Complete only if: for joint or secured credit, or applicant resides in a community property state or is relying on property located in such a state as a basis for repayment of the credit requested.

| APPLICANT | ☐ Married | ☐ Separated | ☐ Unmarried (including single, divorced, and widowed) |
|---|---|---|---|
| OTHER PARTY | ☐ Married | ☐ Separated | ☐ Unmarried (including single, divorced, and widowed) |

_____  (page 1 of 2)

A payment of $7,333.14 is required to pay off this loan on 11/24/09.

Principal Balance:                        5,799.40
Interest Type:                              Daily
Interest Rate:                             12.250
Interest Due:                            1,533.74
One Day's Interest:                        1.9464
Due Date:                              10/25/2007
Amount Past Due by Payoff Date:         4,334.54
Past Due Payment Count:                        25
Late Charge Due:                             0.00



Payoff on 11/24/2009 vs. 05/25/2014

CHARTER OAK FEDERAL

32 Chicago Ave., Groton, CT 06340
(860)446-8085 Fax (860)446-1427

**LOANLINER**
**Application**

| | | ANNUAL FEE. | OVER LIMIT FEE | APR. | PIN DECLINE FEE | STOP PMT. FEE | LATE PMT. FEE | GRACE PERIOD | RETURNED ITEM FEE | METHOD OF COMPUTING THE BALANCE FOR PURCHASES | VARIABLE RATE INFORMATION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | **VISA CREDIT DISCLOSURES** | | | | | | | | | | |
| • Please complete front and back of application.<br>• Sign on back page.<br>• Return completed application to credit union.<br>• An incomplete or unsigned application may delay processing. | CLASSIC | $0. | $15. | 14.50% | $10. | $20. | $15. | 25 DAYS | $20. | Average Daily balance, including new purchases. | Your annual percentage rate may vary quarterly. The rate will be the Prime Rate as exhibited in the Wall Street Journal on the first Tuesday of January, April, July and October plus 5%. If a range of Prime Rates is shown, we will use the highest Prime Rate. The Rate as of printing was below 17.5% or above 18.9%. |
| | GOLD | $0. | $15. | 13.9% | $10. | $20. | $15. | 25 DAYS | $20. | Average Daily balance, including new purchases. | N/A |

This information is accurate as of September, 1997, the date of printing. This information may have changed after that date. To find out what may have changed, write us at:
COFCU; VISA Department, 3 Boston Post Road, Waterford, CT 06385.

**Individual Credit:** You must complete the **Applicant** section about yourself and the **Other** section about your spouse if:
1. you live in or the property pledged as collateral is located in a community property state (AZ, CA, ID, LA, NM, NV, TX, WA, WI),
2. your spouse will use the account, or
3. you are relying on your spouse's income as a basis for repayment. If you are relying on income from alimony, child support, or seperate maintenance, complete the **Other** section to the extent possible about the person on whose payments you are relying.
**Joint Credit:** If you are applying with another person, complete the **Applicant** and **Other** sections.
**Guarantor:** Complete the **Other** section if you are a guarantor on an account / loan.

☒ **LOANLINER Account/Loan:** ☒ Individual ☐ Joint
*(Including ATM/Debit Card Access to the Account if Available)*

☐ **Credit Card Account:** ☐ Individual ☐ Joint
*(See Disclosure Table or Agreement for Terms)*

Amount Requested $ 2650

Credit Limit Requested $ _____

Purpose/ Collateral: 89 Ford Bronco

If Authorized User, Name: _____

Repayment: ☐ Payroll Deduction  ☒ Cash  ☐ Military Allotment  ☐ Automatic Payment

☒ Single Credit Disability Insurance  ☒ Single Credit Life Insurance
☐ Joint Credit Disability Insurance  ☐ Joint Credit Life Insurance

Check coverage(s) desired. The credit union will disclose the cost of this voluntary insurance to you. A separate insurance election which discloses the terms and conditions must be signed for coverage to become effective.

| NAME (Last - First - Initial)<br>Walters, Anthony T | | MOTHER'S MAIDEN NAME<br>Catherine | NAME (Last - First - Initial)<br>Walters, Michael E | | MOTHER'S MAIDEN NAME<br>Missing |
|---|---|---|---|---|---|
| ACCOUNT NUMBER<br>0653 | SOCIAL SECURITY NUMBER<br>9031 | | ACCOUNT NUMBER<br>0723 | SOCIAL SECURITY NUMBER<br>3960 | |
| DRIVER'S LICENSE NUMBER/STATE | LIST AGES OF DEPENDENTS NOT LISTED BY OTHER APPLICANT (Exclude Self) | | DRIVER'S LICENSE NUMBER/STATE<br>/ | LIST AGES OF DEPENDENTS NOT LISTED BY OTHER APPLICANT (Exclude Self) | |
| BIRTH DATE<br>/1981 | HOME PHONE | BUSINESS PHONE / EXT. | BIRTH DATE<br>/1981 | HOME PHONE | BUSINESS PHONE / EXT.<br>(860) |
| PRESENT ADDRESS (Street - City - State - Zip)<br>253 Lake St<br><br>Moosup, CT 06354 | | ☐ OWN ☐ RENT<br>YEARS AT THIS ADDRESS<br>01/01/1996 | PRESENT ADDRESS (Street - City - State - Zip)<br>57 Cornell Ave.<br><br>Moosup, CT 06354 | | ☐ OWN ☐ RENT<br>YEARS AT THIS ADDRESS<br>01/01/1996 |
| PREVIOUS ADDRESS (Street - City - State - Zip)<br><br>, CT | | ☐ OWN ☐ RENT<br>YEARS AT THIS ADDRESS | PREVIOUS ADDRESS (Street - City - State - Zip)<br><br>, CT | | ☐ OWN ☐ RENT<br>YEARS AT THIS ADDRESS |
| COMPLETE FOR JOINT CREDIT, SECURED CREDIT OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE: ☐ MARRIED ☐ SEPERATED ☐ UNMARRIED (Single - Divorced - Widowed) | | | COMPLETE FOR JOINT CREDIT, SECURED CREDIT OR IF YOU LIVE IN A COMMUNITY PROPERTY STATE: ☐ MARRIED ☐ SEPERATED ☐ UNMARRIED (Single - Divorced - Widowed) | | |
| NAME AND ADDRESS OF EMPLOYER | Rb Greens<br>Maple St          Danielson, CT | | NAME AND ADDRESS OF EMPLOYER | City Of New Jersey/housing auth. | |
| TITLE / GRADE<br>Mecjanice | START DATE<br>01/01/2000 | HOURS AT WORK | TITLE / GRADE | START DATE | HOURS AT WORK |
| SUPERVISOR'S NAME | IF SELF EMPLOYED, TYPE OF BUSINESS | | SUPERVISOR'S NAME | IF SELF EMPLOYED, TYPE OF BUSINESS | |
| NOTICE:    ALIMONY, CHILD SUPPORT, OR SEPERATE MAINTENANCE INCOME NEED NOT BE REVEALED IF YOU DO NOT CHOOSE TO HAVE IT CONSIDERED. | | | NOTICE:    ALIMONY, CHILD SUPPORT, OR SEPERATE MAINTENANCE INCOME NEED NOT BE REVEALED IF YOU DO NOT CHOOSE TO HAVE IT CONSIDERED. | | |
| EMPLOYMENT INCOME<br>$  1892  PER  MO. | OTHER INCOME<br>$          PER | | EMPLOYMENT INCOME<br>$          PER | OTHER INCOME<br>$          PER | |
| ☐ NET ☐ GROSS | SOURCE | | ☐ NET ☐ GROSS | SOURCE | |
| MILITARY: IS DUTY STATION TRANSFER EXPECTED DURING NEXT YEAR? ☐ YES ☐ NO<br>WHERE                    ENDING/SEPARATION DATE | | | MILITARY: IS DUTY STATION TRANSFER EXPECTED DURING NEXT YEAR? ☐ YES ☐ NO<br>WHERE                    ENDING/SEPARATION DATE | | |
| PREVIOUS EMPLOYER NAME AND ADDRESS IF EMPLOYED LESS THAN FIVE YEARS<br>Thames Shipyard | | STARTING DATE<br><br>ENDING DATE | PREVIOUS EMPLOYER NAME AND ADDRESS IF EMPLOYED LESS THAN FIVE YEARS | | STARTING DATE<br><br>ENDING DATE |

CUNA MUTUAL GROUP, 1989,22,94,99,93,98, ALL RIGHTS RESERVED

CONTINUED ON REVERSE SIDE

AXXX023 27680

RELATIONSHIP: Brother

| CREDITOR NAME OTHER THAN THIS CREDIT UNION (Attach additional sheets if necessary) | INTEREST RATE | PRESENT BALANCE | MONTHLY PAYMENT | OWNED BY Applicant | Other |
|---|---|---|---|---|---|
| ☐ RENT  ☐ FIRST MORTGAGE (include Tax and Ins.) | | $ | $ | | |
| 2nd MORTGAGE | | $ | $ | | |
| 1st AUTO LOAN | | $ | $ | | |
| 2nd AUTO LOAN | | $ | $ | | |
| CHILD - CARE | | $ | $ | | |
| CHILD SUPPORT | | $ | $ | | |
| CREDIT CARD | | $ | $ | | |
| CREDIT CARD | | $ | $ | | |
| OTHER | | $ | $ | | |
| OTHER | | $ | $ | | |
| LIST ANY NAMES UNDER WHICH YOUR CREDIT REFERENCES AND CREDIT HISTORY CAN BE CHECKED: | TOTALS | $ | $ | | |

| | LIST LOCATION OF PROPERTY OR FINANCIAL INSTITUTION | MARKET VALUE | PLEDGED AS COLLATERAL FOR ANOTHER LOAN | | OWNED BY Applicant | Other |
|---|---|---|---|---|---|---|
| HOME | | $ | YES | NO | | |
| AUTO | | $ | YES | NO | | |
| SAVINGS | | $ | YES | NO | | |
| CHECKING | | $ | YES | NO | | |
| OTHER (Describe) | | $ | YES | NO | | |

**IF YOU ANSWER "YES" TO ANY QUESTION OTHER THAN #1, EXPLAIN ON AN ATTACHED SHEET.**

| | APPLICANT YES | NO | OTHER YES | NO |
|---|---|---|---|---|
| 1. ARE YOU A U.S. CITIZEN OR PERMANENT RESIDENT ALIEN? | | | | |
| 2. DO YOU CURRENTLY HAVE ANY OUTSTANDING JUDGMENTS OR HAVE YOU EVER FILED FOR BANKRUPTCY, HAD A DEBT ADJUSTMENT PLAN CONFIRMED UNDER CHAPTER 13, HAD PROPERTY FORECLOSED UPON OR REPOSSESSED IN THE LAST 7 YEARS, OR BEEN A PARTY IN A LAW SUIT? | | ✓ | | |
| 3. IS YOUR INCOME LIKELY TO DECLINE IN THE NEXT TWO YEARS? | | | ✓ | |
| 4. ARE YOU A CO-MAKER, CO-SIGNER OR GUARANTOR ON ANY LOAN NOT LISTED ABOVE? FOR WHOM (Name of Others Obligated on loan):              TO WHOM (Name of Creditor): | | | ✓ | |

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**WISCONSIN RESIDENTS ONLY:** (1) No provision of any marital property agreement, unilateral statement under Section 766.59, or court decree under Section 766.70 will adversely affect the rights of the Credit Union unless the Credit

Union is furnished a copy of the agreement, statement or decree, or has actual knowledge of its terms, before the credit is granted or the account is opened. (2) Please sign if you are not applying for this account or loan with your spouse. The credit being applied for, if granted, will be incurred in the interest of the marriage or family of the undersigned.

☞ SIGNATURE FOR WISCONSIN RESIDENTS ONLY                DATE

1. You promise that everything you have stated in this application is correct to the best of your knowledge and that the above information is a complete listing of what you owe. If there are any important changes you will notify us in writing immediately. You authorize the Credit Union to obtain credit reports in connection with this application for credit and for any update, renewal or extension of the credit received. You understand that the Credit Union will rely on the information in this application and your credit report to make its decision. If you request, the Credit Union will tell you the name and address of any credit bureau from which it received a credit report on you. It is a federal crime to willfully and deliberately provide incomplete or incorrect information on loan applications made to federal credit unions or state chartered credit unions insured by NCUA.

2. **If you are applying for a credit card, you understand that the use of your credit card will constitute acknowledgment of receipt and agreement to the** terms of the credit card agreement and disclosures. You grant us a security interest in the following share accounts to secure your credit card account. When you are in default, you authorize us to apply the balance in these accounts to any amounts due. If no dollar amount or account number is indicated below, you authorize us to apply the balance in you individual or joint share accounts at the time of default to pay any amounts due. Shares and deposits in an Individual Retirement Account, and any other account that would lose special tax treatment under state or federal law if given as security, are not subject to the security interest you have given in your shares and deposits.

Amount $_____    Account No._____
Amount $_____    Account No._____

☞ Anthony R. Watters (SEAL)    2/1/00
APPLICANT'S SIGNATURE                DATE

☞                    (SEAL)
OTHER SIGNATURE                DATE

| DATE | ☐ APPROVED | APPROVED LIMITS: | SIGNATURES: | LINE OF CREDIT | OTHER | OTHER | DEBT RATIO / SCORE BEFORE | AFTER |
|---|---|---|---|---|---|---|---|---|
| | ☐ DENIED (Adverse Action Notice Sent) | | $ | $ | $ | $ | | |

LOAN OFFICER COMMENTS:

SIGNATURES:

X_____    X_____
DATE                    DATE



LOANLINER

OPEN-END DISBURSEMENT
RECEIPT PLUS

CHARTER OAK FEDERAL

32 Chicago Ave., Groton, Ct 06340  (860) 446-8085  Fax (860) 448-1426

| BORROWER 1 NAME (PLEASE PRINT) | BORROWER 2 NAME (PLEASE PRINT) | | ACCOUNT NUMBER | DATE |
|---|---|---|---|---|
| ANTHONY T WALTERS | | | ...53-99 | 08/26/02 |

THE ADVANCE IS SECURED BY YOUR SHARES. ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING PROPERTY:

| PROPERTY/MODEL | YEAR | I.D. NUMBER | VALUE | KEY NUMBER |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

PLEDGE OF SHARES AND/OR DEPOSITS $ _____    ACCOUNT NUMBER(S) _____

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | | FIXED | OTHER FEES (Amount and Description) | | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|---|---|---|
| 0.032192 | 11.750 | % | ☒ VARIABLE | $ | | $  4,000.00 |

| AMOUNT ADVANCED | PAYMENT AMOUNT | DATE DUE | PAYMENT FREQUENCY | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|
| $  4,000.00 | $ | 09/25/02 | Monthly | $  4,000.00 | $ |

By accepting the proceeds or by using the funds advanced and deposited into your share/share draft account, you agree (1) that the property referenced above
will secure the advance and any other advances you have now or receive in the future under the LOANLINER Credit and Security Agreement (the Plan) and
any other amounts you owe us for any reason now or in the future in accordance with the terms of the Plan and (2) to make payments as disclosed above in
accordance with the terms of the Plan.

**CONSUMERS' CLAIMS AND DEFENSES NOTICE –** *The following paragraph applies only when box above is checked.*
NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES
WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE
PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE
DEBTOR HEREUNDER.

REQUESTED:                          MEMBER PAYS PREMIUM FOR:

| | | | | | | CHECK NO. _____ | | BRANCH NO. 104 |
|---|---|---|---|---|---|---|---|---|
| ☐ BY MAIL | ☐ THRU OFFICE | ☐ SINGLE CREDIT DISABILITY | ☐ SINGLE CREDIT LIFE | | | | | |
| ☒ BY PHONE | ☐ INTERNALLY BY CU | ☐ JOINT CREDIT DISABILITY | ☐ JOINT CREDIT LIFE | PLAN SUBACCOUNT NO. 99 | | | PROCESSED BY: DS |

| DATE | LOAN OFFICER COMMENTS: | LOAN OFFICER INITIALS |
|---|---|---|
| | | |

© CUNA MUTUAL GROUP, 1998, ALL RIGHTS RESERVED

VXX080  27860

# CHARTER OAK FEDERAL

52 Chicago Ave., Groton, CT 06340 • (860) 446-8085 • Fax: (860) 446-1426

**LOANLINER**
Open-End Plan
Signatures *PLUS*

- Sign on signature line.
- Return completed form to credit union.
- An incomplete or unsigned form may delay processing.

| BORROWER 1 NAME (Please Print) | ACCOUNT NUMBER | BORROWER 2 NAME (Please Print) | ACCOUNT NUMBER |
|---|---|---|---|
| Anthony Walters | 0653 | | |

## Credit and Security Agreement

This LOANLINER® Credit and Security Agreement, which includes the Truth in Lending Disclosures, will be referred to as "the Plan." The Plan documents include this Agreement and an Addendum. "You", "your" and "borrower" mean any person who signs the Plan. "Credit union", "we", "our" and "us" mean the Credit Union whose name appears on the Plan or anyone to whom the Credit Union transfers its rights under the Plan. Some of the provisions of the Plan apply only if the Credit Union is state chartered. A credit union has a state charter if its name does not include the words "Federal Credit Union" or "FCU". This is a multi-state document which may be used to lend to borrowers in all states except Iowa, Wisconsin and Louisiana.

**1. HOW THIS PLAN WORKS —** This is an open-end, multi-featured credit plan. We anticipate that, from time to time, you will borrow money (called "advances") under the Plan. **We are not required to make advances to you under the Plan and can refuse a request for an advance at any time.** The Addendum describes the different types of credit (called "subaccounts") available under the Plan, the current interest rate for each subaccount expressed as a daily periodic rate and corresponding annual percentage rate and other charges. It may also have other terms and a schedule for determining the payment amounts.

**2. CREDIT LIMIT —** We may, but do not have to, establish a credit limit on certain subaccounts. If a credit limit is set for a subaccount, you promise not to exceed the established credit limit. If you exceed the credit limit, you promise to repay immediately the amount which exceeds the credit limit.

**3. REPAYMENT —** You promise to repay all amounts you owe under the Plan

plus interest. Payments are due on the last day of the month unless we set a different date at the time of an advance. If the Addendum has no payment schedule for a subaccount, your payment will be determined at the time of each advance. Payments must include any amount past due and any amount by which you have exceeded any credit limit you have been given for a subaccount. You may repay all or part of what you owe at any time without any prepayment penalty. Even if you prepay, you will still be required to make the regularly scheduled payments unless we agree in writing to a change in the payment schedule. If you have a joint sharedraft account, you will be responsible for paying all overdraft advances obtained by a joint holder of the sharedraft account. Payments will be applied in the order the Credit Union chooses.

**4. PLAN ACCESS —** You can obtain credit advances in any manner authorized by us. If we allow you to use your ATM/Debit card to access the Plan, you will be liable for the unauthorized use of your ATM/Debit card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. If you believe your ATM/Debit card has been lost or stolen, immediately inform the Credit Union by calling or writing us at the telephone number or address that appears elsewhere in the Plan. If the card is used to obtain advances directly from the Plan, your liability will not exceed $50. If the unauthorized withdrawal is from a sharedraft account, your liability is governed by the Regulation E disclosures you received at the time your received your ATM/Debit card, even if the withdrawal results in an advance being made from your overdraft subaccount.

*(continued on reverse side)*

## Signatures

1. You have received and read the LOANLINER® Credit and Security Agreement, including the Addendum and Credit Insurance Certificate. By signing below you agree to be bound by the terms of the agreement.

2. **You grant us a security interest in the following share accounts to secure what you owe under the LOANLINER® Credit Agreement. When you are in default you authorize us to apply the balance in these accounts to any amounts due.** If no dollar amount or account number is indicated below, you authorize us to apply the balance

in your individual and joint share accounts at the time of default to pay any amounts due. Shares and deposits in an Individual Retirement Account and any other account that would lose special tax treatment under state or federal law if given as security are not subject to the security interest you have given in your shares and deposits.

Amount $_____  Account No. _____

Amount $_____  Account No. _____

| | | |
|---|---|---|
| Anthony A. Walters (SEAL) | 2/1/00 | (SEAL) |
| BORROWER 1 SIGNATURE | DATE | BORROWER 2 SIGNATURE    DATE |

## Credit Insurance Application/Schedule

**CUNA Mutual Insurance Society** • Madison, WI 53701-0391 • Phone: 800/937-2644

"You" or "Your" means the member and the joint insured (if applicable).

Credit insurance is **voluntary and not required in order to obtain this loan.** You may select any insurer of your choice. You can get this insurance only if you check the "yes" box below and sign your name and write in the date. The rate you are charged for the insurance is subject to change. You will receive written notice before any increase goes into effect. You have the right to stop this insurance by notifying your credit union in writing. Your signature below means you agree that:

- If you elect insurance, you authorize the credit union to add the charges for insurance to your loan each month.

- You are eligible for disability insurance only if you are working for wages or profit for 25 hours a week or more on the date of any advance. If you are not, that particular advance will not be insured until you return to work. If you are off work because of temporary layoff, strike or vacation, but soon to resume, you will be considered at work.

- You are eligible for insurance up to the Maximum Age for insurance. Insurance will stop when you reach that age.

NOTE: THE LIFE AND DISABILITY INSURANCE CONTAINS CERTAIN BENEFIT EXCLUSIONS, INCLUDING A PRE-EXISTING CONDITION EXCLUSION. PLEASE REFER TO YOUR CERTIFICATE FOR DETAILS.

| YOU ELECT THE FOLLOWING INSURANCE COVERAGE(S) | YES | NO | COST PER $100 OF YOUR MONTHLY LOAN BALANCE | COVERED MEMBER (please print) |
|---|---|---|---|---|
| SINGLE CREDIT DISABILITY | X | | 27.2¢ | Anthony Walters |
| SINGLE CREDIT LIFE | X | | 5¢ | Anthony Walters |
| JOINT CREDIT LIFE | | | | |

Credit and Security Agreement (continued)

**5. FINANCE CHARGE** — The dollar amount you pay for money borrowed is called a "finance charge" and begins on the date of each advance. A finance charge will be computed separately for each separate balance under the Plan. To compute the finance charge, the unpaid balance for each day since your last payment (or since an advance if you have not yet made a payment) is multiplied by the applicable daily periodic rate. The sum of these amounts is the finance charge owed. The balance used to compute the finance charge is the unpaid balance each day after payments and credits to that balance have been subtracted and any additions to the balance have been made. In addition to interest, we may charge other finance charges which are disclosed on the Addendum. If the interest rate is a variable interest rate, the Addendum explains how the variable interest rate works.

**6. SECURITY INTEREST** — The Plan is secured by the shares and deposits in all joint and individual accounts you have with the Credit Union now and in the future. Shares and deposits in an Individual Retirement Account and any other account which would lose special tax treatment under state or federal law if given as security are not subject to the security interest you have given in your shares and deposits. Additional security may be required depending on the subaccount under which an advance is requested. For example, a subaccount called "New Car Advances" means the security will be a new car. A subaccount called "Other Secured Advances" means you must offer security acceptable to the Credit Union for the advance. Property given as security for any advance under the Plan will secure all other amounts you owe under the Plan or under any other Agreement with us now or in the future. Property securing other loans may also secure this Plan. However, if you have given your dwelling as security for a loan with us, that dwelling will not secure an advance made under the Plan.

**7. PROPERTY INSURANCE, TAXES AND FEES** — You will be required to purchase property insurance on certain types of security that you give for advances. You may purchase the property insurance from anyone you choose who is acceptable to the Credit Union. The amount and coverage of the property insurance must be acceptable to us. You may provide the property insurance through a policy you already have, or through a policy you get and pay for. You promise to make the insurance policy payable to us and to deliver the policy or proof of coverage to us if asked to do so.

If you cancel your insurance and get a refund, we have a right to the refund. If the property is lost or damaged, we can use the insurance settlement to repair the property or apply it towards what you owe. You authorize us to indorse any draft or check which may be payable to you in order for us to collect any refund or benefits due under your insurance policy. You promise to pay all taxes and fees (like registration fees) due on the property and to keep the property insured against loss and damage.

If you do not pay the taxes or fees on the property when due or keep it insured, we may pay these obligations, but we are not required to do so. Any money we spend for taxes, fees or insurance will be added to the unpaid balance of the advance and you will pay interest on those amounts at the same rate you agreed to pay on the advance. We may receive payments in connection with the insurance from a company which provides the insurance. We may monitor our loans for the purpose of determining whether you and other borrowers have complied with the insurance requirements of its loan agreements or may engage others to do so. The insurance charge added to an advance may include (1) the insurance company's payments to us and (2) the cost of determining compliance with the insurance requirements. If we add amounts for taxes, fees or insurance to the unpaid balance of an advance, we may increase your payments to pay the amount added within the term of the insurance or approximate term of the advance.

**8. CREDIT INSURANCE** — Credit life and/or credit disability insurance is optional under the Plan. If you qualify for and purchase the insurance from us, you authorize us to add the insurance premiums monthly to your loan balance and charge you interest on the entire balance. If you elect credit insurance, your payments may increase or the period of time necessary to repay your advance may be extended beyond the approximate term stated on the Addendum. The credit insurance rates may change during the Plan. If the rates change, we will provide any notices required by applicable law.

**9. PERIODIC STATEMENT** — On a regular basis you will receive a statement showing all transactions under the Plan during the period covered by the statement. Statements and notices will be sent to you at the most recent address you have given us in writing. Unless applicable law requires notice to each joint borrower, notice to any one of you will be notice to all.

**10. JOINT ACCOUNTS** — If this is a joint account, each of you is individually and jointly responsible for paying all amounts owed. That means we can enforce our rights under the Plan against any one of you individually or against all of you together. If you give us inconsistent instructions, we can refuse to follow your instructions. Unless our written policy requires all of you to sign for an advance, each of you authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s).

**11. FEES AND CHARGES** — If you give us a security interest in certain types of property, we may charge you a filing fee to perfect our interest in the property. If so, the amount of the fee will be disclosed to you at the time you obtain an advance. We may also charge you other fees in connection with the Plan. Those fees are disclosed on the Addendum and will be added to your loan balance unless you pay them in cash.

**12. UPDATING CREDIT INFORMATION** — You promise that you will promptly give us written notice if you move, change your name or employment, or if any other information you provided to us changes. Upon our request you also agree to provide us updated financial information.

**13. DEFAULT** — The following paragraph applies to borrowers in Idaho, Kansas, Maine and state chartered credit unions lending to South Carolina borrowers: You will be in default if you do not make a payment of the amount required when it is due. You will also be in default if we believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.

The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers: You will be in default if you do not make a payment of the amount required when it is due. You will be in default if you break any

The following paragraph applies to borrowers in all other states and federally chartered credit unions lending to South Carolina borrowers: When you are in default, we can require immediate payment (acceleration) of the entire balance under the Plan. You can waive any right you have to demand for payment, notice of intent to accelerate and notice of acceleration.

The following paragraphs apply to all borrowers: If immediate payment is demanded, you will continue to pay interest until what you owe has been repaid at the applicable interest rates in effect unless a default rate is disclosed on the Addendum. If a demand for immediate payment has been made, the shares and deposits given as security for the Plan can be applied towards what you owe. We can also exercise any other rights given by law when you are in default.

You agree the Credit Union has the right to take possession of any property given as security for an advance under the Plan without judicial process if this can be done without breach of the peace. If we ask, you promise to deliver the property at a time and place we choose. We will not be responsible for any other property, not covered by this Agreement, that you leave inside the property or that is attached to the property. We will try to return that property to you or make it available to you to claim.

After we have possession of the property, we can sell it and apply the money to any amounts you owe us. We will give you notice of any public sale or the date after which a private sale will be held. Our expenses for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale and attorney's fees to the extent permitted under state law or awarded under §506(b) of the Bankruptcy Code. The rest of the sale money will be applied to what you owe under the Plan.

You will also have to pay any amount that remains unpaid after the sale money has been applied to an unpaid balance under the Plan. You agree to pay interest on that amount at the same rate as the advance until that amount has been paid.

**15. CANCELLING OR CHANGING THE PLAN:** The following paragraph applies only to state chartered credit unions lending to Illinois borrowers: We have the right to change the terms of the Plan from time to time after giving you any advance notice required by law. Any change to the interest rate or other charges will apply to future advances.

The following paragraph applies to all borrowers other than Illinois borrowers of state chartered credit unions: We have the right to change the terms of the Plan from time to time after giving you any advance notice required by law. Any change in the interest rate will apply to future advances, and at our discretion, and subject to any requirements of applicable law, will also apply to unpaid balances.

The following paragraph applies to all borrowers: An increase in the daily periodic rate under a variable interest rate is not considered a change in terms under the Plan. We can cancel the entire Plan or any part of the Plan at any time. You can cancel the Plan at any time. Your obligation to pay the unpaid balances under the terms of the Plan continues whether you or the Credit Union cancel the Plan.

**16. NOTICE TO CO-SIGNER — YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.**

**17. SECURITY FOR THE LOAN** — You give us what is known as a security interest in all property described in any receipt, voucher or other document you receive for an advance ("the Advance"). The security interest you give includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which you buy within 10 days of the Advance or any extensions, renewals or refinancing of the Advance. It also includes any money you receive from selling the property or from insurance you have on the property. If the value of the property declines, you promise to give us more property as security if asked to do so.

**18. WHAT THE SECURITY INTEREST COVERS** — The security interest secures the Advance described in the receipt, voucher or any other document you receive at the time of the Advance and any extensions, renewals or refinancings of the Advance. It also secures any other advances you have now or receive in the future under the Plan and any other amounts or loans, including any credit card loan, you owe us for any reason now or in the future, except any loan secured by your principal residence. If the property is household goods as defined by the Federal Trade Commission Credit Practices Rule, the property will secure only the Advance and not other amounts you owe.

**19. OWNERSHIP OF THE PROPERTY** — You promise that you own the property or if the Advance is to buy the property, you promise you will use the Advance for that purpose. You promise that no one else has any interest in or claim against the property that you have not already told us about. You promise not to sell or lease the property or to use it as security for a loan with another creditor until the Advance is repaid. You promise you will allow no other security interest or lien to attach to the property either by your actions or by operation of law.

**20. PROTECTING THE SECURITY INTEREST** — If your state issues a title for the property, you promise to have our security interest shown on the title. We may have to file what is called a financing statement to protect our security interest from the claims of others. If asked to do so, you promise to sign a financing statement. You also promise to do whatever else we think is necessary to protect our security interest in the property.

**21. USE OF PROPERTY** — Until the Advance has been paid off, you promise you will: (1) Use the property carefully and keep it in good repair. (2) Obtain our written permission before making major changes to the property or changing the address where the property is kept. (3) Inform us in writing before changing your address. (4) Allow us to inspect the property. (5) Promptly notify us if the property is damaged, stolen or abused. (6) Not use the property for any unlawful purpose.

**22. NOTICE** — If you do not purchase the required property insurance, the insurance we may purchase and charge you for will cover only our interest in the property